IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2017 Session

**STATE OF TENNESSEE v. STEVEN DAVID CATALANO**

**Appeal from the Circuit Court for Williamson County**
**No. I-CR160221      Joseph Woodruff, Judge**

_____

**No. M2016-02272-CCA-R3-CD**

_____

The Appellant, Steven David Catalano, entered a plea of nolo contendere to driving under the influence (DUI), reserving a certified question of law challenging whether a be-on-the-lookout report (BOLO) issued by a Brentwood police officer provided sufficient probable cause or reasonable suspicion to justify a Franklin police officer's traffic stop of the Appellant's vehicle. The State contends that the question presented is not dispositive; therefore, this court is without jurisdiction to consider the appeal. Upon review of the record and the parties' briefs, we agree with the State and conclude that the appeal must be dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Grover Christopher Collins, Nashville, Tennessee, for the Appellant, Steven David Catalano.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On April 11, 2016, the Williamson County Grand Jury returned an indictment charging the Appellant with DUI and DUI per se, which is driving under the influence with a blood alcohol content of .08% or greater. See Tenn. Code Ann. § 55-10-401(1),

(2). Thereafter, on July 13, 2016, the Appellant filed a motion to suppress evidence regarding his seizure and the resulting blood alcohol test, arguing that the officer did not have reasonable suspicion or probable cause to justify the traffic stop.

At the suppression hearing, Officer Stan Boyd, Jr., with the Brentwood Police Department testified that at 2:42 a.m. on June 14, 2015, he was traveling southbound on Interstate 65 north of Concord Road when he saw a dark-colored sport utility vehicle (SUV) cross the right and left sides of its lane of travel multiple times. Officer Boyd saw no other vehicles nearby and noticed nothing on the road to justify the SUV's failure to maintain its lane of traffic. Officer Boyd said that he was unable to stop the vehicle because he was transporting someone to the Williamson County Jail. When he was unable to find other Brentwood officers in the area, he provided the Franklin Police Department's dispatcher with "a description of the vehicle[,] . . . the tag information of the vehicle and the last direction of traffic once it exited." Officer Boyd followed the SUV until it took the eastbound Cool Springs Boulevard exit. Officer Boyd said that he spoke with the Franklin Police Department's dispatcher no later than 2:46 a.m.

Officer Boyd said that he video recorded the SUV's erratic driving. As the video was played for the court, Officer Boyd explained what was transpiring on the video. Officer Boyd said that the section of the interstate on which the SUV was traveling had four lanes in each direction. The first lane was identified as the far right lane, the second lane was located to the left of the first lane, the third lane was to the left of the second lane, and the high occupancy vehicle lane was to the left of the third lane. The SUV was traveling in the second lane. The video showed that the SUV crossed the left "dashed line," returned to the second lane, drifted to the right twice, then drifted left and "hover[ed]" in both the second and third lanes. The SUV slowed then gradually increased its speed and drifted far enough to the right that both passenger side tires were completely over the line into the first lane. Officer Boyd said that "half of the car [was] over both lanes." The SUV continued to drift from side to side and did not signal its lane changes. Officer Boyd said that the SUV "put[] its right signal on at this point, drift[ed] over, or ma[de] a lane change and then suddenly drift[ed] back over a solid white line right in front of me with no direction," which forced the officer to decrease his speed. The vehicle then took the eastbound exit onto Cool Springs Boulevard. The video did not show the vehicle after it left the exit ramp.

On cross-examination, Officer Boyd said that as he was following the Appellant's vehicle, he told the Franklin Police Department's dispatcher "what I was observing, a vehicle failing to maintain its lane multiple times, exiting eastbound onto Cool Springs Boulevard, and the tag number." Officer Boyd did not recall whether he told the dispatcher if the SUV was a "dark color or black" and thought he may have told the dispatcher that the SUV was a Ford Explorer.

Officer Adam Cohen with the Franklin Police Department testified that around 2:46 a.m., he was in the middle of a traffic stop at the intersection of Interstate 65 and Cool Springs Boulevard when he heard a BOLO from a Brentwood police officer regarding a "possible intoxicated driver" traveling southbound on Interstate 65 just south of Moores Lane. Officer Cohen gave the person he had stopped a "verbal warning" and let him go. He then drove "westbound on Cool Springs Boulevard to get on to southbound on Interstate 65" to look for the subject of the BOLO. However, he made a "U-turn" when he heard the Brentwood officer relay that the vehicle, a black Ford Explorer, had taken the eastbound Cool Springs Boulevard exit. Officer Cohen did not recall knowing the tag number of the SUV.

Officer Cohen said that he saw a dark-colored SUV traveling eastbound on Cool Springs Boulevard. Officer Cohen followed the SUV as it turned southbound onto Carothers Parkway and saw it turn right on Crescent Center Drive. Officer Cohen explained that Crescent Center Drive had "one dedicated lane each way, and then there is also a center turning lane that is dedicated for turning both ways." The tires on the left side of the SUV crossed over the left yellow line on Crescent Center Drive before making a right turn into the Embassy Suites parking lot. Officer Cohen said that at that point, "[b]ased off the BOLO I had received from the Brentwood Officer and also the failure to maintain [the] lane I had just observed, I initiated a traffic stop."

A video recording of Officer Cohen's pursuit of the SUV was played for the court. The video began while Officer Cohen was performing the traffic stop that he abandoned in order to look for the Appellant's vehicle and continued through the stop of the Appellant's vehicle. The time stamp on the recording reflected that the officer stopped the SUV at 1:48:54 a.m. Officer Cohen explained that the time stamp was one hour behind the actual time of the stop because the recording device had not adjusted for daylight savings time.

On cross-examination, Officer Cohen acknowledged that in order to catch the SUV, he had to drive "[p]retty fast," sometimes as much as 73 miles-per-hour in a 40 miles-per-hour zone. Officer Cohen surmised that his driving at that speed was safe because of the road conditions and because no other vehicles were on the road. Officer Cohen acknowledged, however, that he "went a little wide to make" the right turn into the Embassy Suites parking lot, explaining that "[a]t the speed I was travelling, which was a bit fast, it kind of was necessary to make a little bit of a wider turn."

On redirect examination, Officer Cohen said that he saw nothing on Crescent Center Drive which would prevent the SUV from safely maintaining its lane of travel.

At the conclusion of the proof, defense counsel acknowledged that Officer Boyd had probable cause "to initiate a traffic stop of the vehicle he saw." Nevertheless,

defense counsel argued that the State had not presented sufficient proof that the Appellant's SUV was the same SUV that Officer Boyd had seen, noting that Officer Cohen failed to verify that the tag number of the Appellant's vehicle was the same as the tag number on the suspect vehicle. Defense counsel argued that numerous black SUVs were in Williamson County. Defense counsel contended the Appellant "had to negotiate that turn in the way that he did," noting that Officer Cohen also made a wide turn into the Embassy Suites parking lot.

The State responded that Officer Cohen's observations alone or his observations in conjunction with Officer Boyd's observations provided reasonable suspicion for the stop.

The trial court stated that after considering the officers' testimony and the two videos, it agreed with the State's argument. The court found that Officer Cohen "had reasonable suspicion to initiate a traffic stop of the dark SUV that he observed. Under those circumstances of Officer Boyd's report, the general traffic conditions which there were no other vehicles around." The court further found that a "very brief" time had elapsed between Officer Boyd's issuance of the BOLO and Officer Cohen's observation of the Appellant's SUV. The court noted that the officers saw no other vehicles on the road at that time. The court further accredited Officer Cohen's testimony that the Appellant crossed the yellow line in an area with no visible obstructions or defects in the road. The court said that Officer Cohen's video also showed "that the [Appellant's] car came back into the right hand lane of travel heading straight for a distance . . . [before turning] into the Embassy Suites," belying the defense's argument that "a reasonable driver had to leave the lane of travel and then make a wide sweeping turn into the Embassy Suites, because [in] fact he didn't do that." The court found that Officer Cohen had reasonable suspicion and probable cause to initiate the traffic stop.

Afterward, on November 3, 2016, the Appellant agreed to plead guilty to DUI in exchange for the dismissal of the DUI per se charge. As a condition of his plea agreement, the Appellant reserved the following certified question of law:

> Whether the information provided to Officer Adam Cohen, FPD[,] by [O]fficer Stan Boyd, BPD[,] through a BOLO established a sufficient nexus among[] the location and description of the vehicle observed by Officer Boyd, and the vehicle seized by Officer Cohen where the only alleged reasonable suspicion leading to stop the [Appellant's] vehicle was based upon the information provided by Officer Boyd of a "Ford Explorer, Black," weaving, exiting Interstate 65 around the Cool Springs Boulevard exit, Officer Cohen testified that he was only investigating a DUI, and whether the evidence seized pursuant to the stop violated [the

- 4 -

Appellant's] protections against unreasonable searche[s] and seizures as guaranteed by the Fourth Amendment to the United States Constitution and [a]rticle I, section 7 of the Tennessee Constitution.

## II. Analysis

Tennessee Rule of Criminal Procedure 37(b)(2)(A) provides that a certified question may be reserved when:

> (A) the defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case . . . .

See also Tenn. R. Crim. P. 37(b)(2)(D); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).

The trial court, the Appellant, and the State agreed that the certified question was dispositive of the case. However, on appeal, the State contends that the question is not dispositive. We agree with the State.

Generally, a "question is dispositive when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]." State v. Dailey, 235 S.W.3d 131, 134 (Tenn. 2007) (internal quotations and citations omitted). "If the appellate court does not agree that the certified question is dispositive, appellate review should be denied." Preston, 759 S.W.2d at 651.

The Appellant's certified question is limited to whether the information provided by Officer Boyd justified Officer Cohen's traffic stop of the Appellant's SUV. However, the certified question does not challenge Officer Cohen's independent observations. We conclude that Officer Cohen's observations alone, namely that the Appellant failed to maintain his lane, gave Officer Cohen reasonable suspicion to justify the traffic stop. See Tenn. Code Ann. § 55-8-123(1). Therefore, we conclude that the Appellant's certified question is not dispositive of the case. See State v. Prince Dumas, No. W2015-01026-CCA-R3-CD, 2016 WL 4083256, at *2 (Tenn. Crim. App. at Jackson, Aug. 1, 2016).

### III.  Conclusion

Accordingly, we conclude that the Appellant's appeal must be dismissed.

_____
NORMA MCGEE OGLE, JUDGE